**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| KAREN L. CANDA, | ) | CASE NO. 1:22-CV-02109-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES GWIN |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | CARMEN E. HENDERSON |
| SECURITY ADMINISTRATION, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant, | ) | |

## I. Introduction

Plaintiff, Karen L. Canda ("Canda" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for a period of disability and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

## II. Procedural History

On June 30, 2017, Claimant filed her application for DIB, alleging a disability onset date of December 31, 2013. The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). On November 14, 2018, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 7, PageID #: 1831). On February 7, 2019, the ALJ issued a written decision finding Claimant was not disabled. (*Id.*, PageID #: 1662). The Appeals

Council declined further review and Claimant filed her complaint in the Northern District of Ohio on April 13, 2020. (*Id.*, PageID #: 1689). On April 27, 2021, upon stipulation by the parties, the district court remanded the matter to the Commissioner to be sent to an ALJ "for further consideration of [Canda's] claim, including any further action to complete the administrative record, and issuance of a new ALJ decision." (*Id.*, PageID #: 1703, Tr. at 1676). Upon remand, the Appeals Counsel vacated the earlier decision and remanded to an ALJ to resolve the following issues:

> The ALJ found the prior administrative medical findings of the State agency psychological consultants persuasive yet the residual functional capacity (RFC) omits their findings regarding the claimant's ability to interact with others (Decision, page 11; Finding 5; Exhibits 1A and 3A). The ALJ noted that he "reworded the mental limitations using more precise terms" (Dec., p.11). However, with respect to the claimant's ability to interact with others, the State agency psychological consultants found the claimant was capable of occasional, superficial interaction with others (Exhibits 1A, page 13; and 3A, page 12). The RFC finds the claimant could interact with supervisors, coworkers, and the public if the work is goal-oriented, but not at a fast-paced or production rate pace, and the worker functions in relating to people are limited to speaking-signaling, serving, or taking instructions-helping as these are defined in Appendix B of the Dictionary of Occupational Titles (DOT) (Decision, pages 5-6, Finding No. 5). It is unclear how the ALJ addressed the assessed quantitative limitation for only occasional interaction. Thus, although the ALJ found the State agency psychological consultants' findings persuasive, no rationale is provided for formulating a less restrictive mental RFC than assessed by these reviewers. This is relevant because the ALJ did not ask the vocational expert at the hearing whether an additional limitation for only occasional interaction with coworkers, supervisors, and the public would significantly erode the occupational base of unskilled, light work.

(*Id.*, PageID #: 1706, Tr. 1679).

A second hearing was held on August 11, 2022, during which Canda, represented by counsel, and an impartial vocational expert testified.[1] (*Id.*, PageID #: 1616, Tr. at 1589). On August 22, 2022, the ALJ issued an unfavorable opinion. (*Id.*, PageID #: 1593, Tr. at 1566). The decision became final on October 22, 2022. (*Id.*).

On November 21, 2022, Claimant filed her Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 13, 15). Claimant asserts the following arguments for review:

> I. The administrative law judge's decision is not legally sufficient and defensible with respect to the Appeals Council's Order for a new hearing or its specific instructions related to the evaluuation [sic] of the opinion evidence.
>
> A. The ALJ failed to consider the facts in evidence and the issues presented in this matter de novo and issue a new decision consistent with the Appeals Council's Remand Order.
>
> B. The ALJ's analysis of the opinion evidence is also deficient[.]
>
> II. The administrative law judge's findings and conclusions concerning the Plaintiff's residual functional capacity ('RFC') are not supported by substantial evidence.

(ECF No. 11 at 10, 17, 21).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearings:

> At the hearing on April 27, 22022, claimant testified she was fired from her job at Petco in 2013 because she missed work. She called

---

[1] Initially, the second hearing was held on April 27, 2022. (*Id.*, PageID #: 1638, Tr. at 1611). During Canda's testimony, the hearing was rescheduled when the ALJ discovered a conflict and recused themself. (*Id.*, PageID #: 1660-61, Tr. at 1633-34).

in sick or had to leave work due to panic attacks. Claimant said she "put up a wall" during treatment at MetroHealth. She would frequently cancel appointments. She would come back when they refused to continue her medication. She started attending treatment on a more regular basis in 2014. Claimant said she had back pain in 2014, 2015. She said she was unable to walk far when she was going to school. She just dealt with the pain and did not seek treatment. Claimant did not file for disability until 2017, testifying she was depressed due to 20 years of abuse. She again said she had "put up a wall". She felt comfortable enough in 2017 to relay the extent of her abuse, and then she was diagnosed with PTSD. Claimant lives with her 22 and 15-year-old daughter. She said her 22-year-old daughter manages the house and helps the claimant financially. Claimant received $540/month in child support.

At the hearing on August 11, 2022, claimant testified she lives in a lot of fear. She is afraid to be home by herself. She is afraid to go places. She only showers about once a week. She said she does not hold friendships. She said her condition is about the same as it was from 2013-2015. Claimant testified she still has difficulty sleeping. She has not applied for jobs due to anxiety.

Claimant testified she lies in bed during the day when her daughters are not home. She does not go to the grocery store. She tries to wash some dishes. She has no hobbies. She does not go to church and does not belong to any social groups. Claimant's parents provide financial assistance. They buy claimant's groceries, straighten up claimant's house and take claimant's daughter to her soccer games. Her parents do yardwork. Claimant estimated she left her house only three times since April 2022. Claimant took an Uber to her attorney's office.

(ECF No. 7, PageID #: 1601, Tr. at 1574).

**B. Relevant Medical Evidence**

The ALJ also summarized Claimant's health records and symptoms:

On August 12, 2013, the claimant saw Mary Ellen Lieder, CNP, at MetroHealth, for pharmacologic management. The claimant reported that she still got depressed probably because of her divorce issues. On examination, the claimant was well groomed with good hygiene. Her behavior was cooperative, and her speech was normal. Her thought process contained racing thought. Her mood was depressed, anxious, and irritable. She had a full affect. She was able to sustain attention and concentration. Recent and

remote memory were within normal limits. Judgment and insight were fair. Nurse Lieder diagnosed major depressive disorder and generalized anxiety disorder. Nurse Lieder continued the claimant's Prozac, Geodon, and Klonopin; stopped Trazodone; and started Ambien "as needed." Nurse Lieder asked the claimant to follow up in one month (Exhibit 2F/114-120).

On February 20, 2014, the claimant followed up with Nurse Lieder. The claimant was going through a divorce. The house was in foreclosure—the claimant was still in the house, but she was starting to pack as she had rented an upper unit of a duplex from a friend in Lakewood and would be moving within a month. The claimant had quit her job, the car was repossessed, and she could not afford a private school for her daughter. The claimant felt exhausted, and she was not eating well or exercising. On examination, the claimant was well groomed, and she had good hygiene. Her behavior was cooperative. She again had racing thoughts. Her mood was depressed and anxious, with a full affect. Her attention and concentration were sustained. Claimant's recent and remote memory were within normal limits. Judgment and insight were fair. Nurse Lieder stopped Ambien and started Seroquel. Nurse Lieder asked the claimant to follow up in one month (Exhibit 2F/107-111).

Claimant followed up with Nurse Lieder on April 16, 2014. The claimant reported that she was not feeling good at all. The house was being foreclosed and she was moving next week. She had a court date on April 29th for the finalization of the divorce. She was not sleeping, and she knew her situation was causing this. She further reported being very nervous, could not focus, and felt defeated. She had to leave the house and find a home where she could take her pets. There was so much to do, but her parents were helping her, and she just needed to get through the next two weeks. On examination, the claimant was well groomed with good hygiene. Her behavior was cooperative; her speech was normal. Claimant had racing thoughts. Her mood was very depressed and anxious. Claimant had a full affect. She was able to sustain attention and concentration. Recent and remote memory were within normal limits. Judgment and insight were fair. Nurse Lieder increased Geodon and Klonopin. Nurse Lieder asked the claimant to follow up in one month (Exhibit 2F/101-105).

On September 3,2014, the claimant returned to see Nurse Lieder. The claimant reported getting divorced and moving, and she believed it was all working out. She hoped to buy a home, she was seeing a "very kind" man and had been on about six dates, and she

hoped to take her daughters (ages 8 and 15-years-old) to an Indians game with him. The claimant further reported that she had joined a gym and was working out, she wanted to start school in January, and she was keeping up with her bills. However, she was still not sleeping well. On examination, the claimant was well groomed with good hygiene. She was cooperative with normal speech. Her thought process contained racing thoughts; her mood remained anxious; her affect was full range; her attention and concentration were sustained; her recent and remote memory were within normal limits; and her judgment and insight were fair. Claimant was less depressed, but remained anxious. Nurse Lieder increased Geodon and added Lunesta. Nurse Lieder asked the claimant to follow up in one month (Exhibit 2F/95-97).

Claimant followed up with Nurse Lieder on October 8, 2014. The claimant reported that she cried every day and she felt that something was "out of whack" although she felt there was really nothing "awful" going on. She further reported that she did nothing, laid on the couch, and could not get motivated to do anything. She was overwhelmed with her new life. Her ex-husband got remarried on Friday and she took it really hard. On examination, the claimant was well groomed with good hygiene. Her behavior was cooperative; her speech was normal; her thought process contained racing thoughts. Her mood was "devastated, nervous, useless". Her affect was full range; her attention and concentration were sustained; her recent and remote memory were within normal limits; and her judgment and insight were fair. Nurse Lieder increased Geodon and she asked the claimant to follow up in one month (Exhibit 2F/88-91).

On November 5, 2014, the claimant reported that she felt less depressed, and she got anxious around 3:00 pm, but she was "OK" after taking her 5:00 pm dose of Geodon. Things were going well at home—she was excited about starting a graduate program in January 2015. Her older daughter became suicidal while on Paxil, but she was better now, and her younger daughter was doing well. The claimant's boyfriend would be meeting her parents that weekend. On examination, the claimant was well groomed with good hygiene. Her behavior was cooperative, and her speech was normal. Claimant had racing thought. Her mood was "pretty good"; her affect was full range; her attention and concentration were sustained; her recent and remote memory were within normal limits; and her judgment and insight were fair. Nurse Lieder adjusted Geodon and she asked the claimant to follow up in one month (Exhibit 2F/82-84).

6

On December 17, 2014, the claimant saw Nurse Lieder. The claimant reported that she was very depressed yesterday "out of nowhere" and had less motivation. She was doing very little house work, but she did the minimum. Her 15-year-old daughter was arrested for shoplifting and had a court date in January. The claimant was getting nervous about school, but her parents were buying her a new computer and she would be taking five classes. On examination, the claimant was well groomed, and she had good hygiene; her behavior was cooperative; her speech was normal; her thought process contained racing thoughts; her mood was even; her affect was full range; her attention and concentration were sustained; her recent and remote memory were within normal limits; and her judgment and insight were fair. Nurse Lieder continued the claimant's medications and she talked about the claimant's upcoming heavy course load and how that could be stressful. She asked the claimant to follow up in two months (Exhibit 2F/58-61).

On February 4, 2015, the claimant returned to see Nurse Lieder. The claimant had started back to school for a Master's degree, and she had been more anxious. She dropped down to 12 credit hours stating that it was scary as it had been 20 years since going to school and the group projects were with much younger people. In addition, the claimant was very concerned with a weight gain of over 100 pounds and her primary care physician wondered if it was the Geodon, which was less likely. The claimant further reported that home was fine, and the children were doing "ok." On examination, the claimant was well groomed with good hygiene. She was cooperative. Her thought process contained racing thoughts. Claimant's mood was not depressed, just anxious. Her affect was full range; her attention and concentration were sustained; her recent and remote memory were within normal limits; and her judgment and insight were fair. Nurse Lieder increased Prozac, stopped Klonopin, and started Valium. She asked the claimant to follow up in one month (Exhibit 2F/46-49).

Claimant followed up with Nurse Lieder on April 2, 2015. The claimant reported that her anxiety was high as her ex-husband wanted joint custody and this would change things financially. The claimant was in school—it was going "ok", and her grades were fine. Things at home were fine. She was not getting out much, but planned to spend Easter with her parents. On examination, the claimant was well groomed with good hygiene. She was cooperative. The claimant had racing thoughts. Her mood was more depressed. Her affect was full range. Claimant was able to sustain attention and concentration. Recent and remote memory

were within normal limits. Judgment and insight were fair. Nurse Lieder made some medication changes including tapering Geodon because the claimant had gained weight on Geodon which was atypical. Otherwise, the claimant reported no medication side effects. Nurse Lieder asked the claimant to follow up in one month (Exhibit 2F/38-41).

On May 6, 2015, the claimant returned to see Nurse Lieder. The claimant reported feeling tired. Sunday was difficult as it was her daughter's first communion and she saw her ex-husband which made her feel nervous and angry. Her family was doing well. The claimant was in the finals week of school, with one more final left. She was not in love with school, but it was "reality" to get a job. On examination, the claimant was well groomed with good hygiene. She was cooperative. The claimant had racing thoughts. Her mood was slightly depressed and less anxious. Her affect was full range; her attention and concentration were sustained; her recent and remote memory were within normal limits; and her judgment and insight were fair. The claimant did not report any medication side effects. Nurse Lieder stopped Lunesta and Klonopin. She started the claimant on Seroquel with the intent of changing from Geodon. Claimant reported weight gain on Geodon, which was atypical. Claimant was to follow up in six weeks (Exhibit 2F/31-34).

(ECF No. 7, PageID #: 1601-04, Tr. at 1574-77)

## C.  Opinion Evidence at Issue

The ALJ summarized the State agency psychological consultants' opinions as follows:

State agency psychological consultant Kristen Haskins, PsyD, reviewed the record on September 20, 2017 (Exhibit 1A). Dr. Haskins found the claimant was capable of short cycle tasks with no fast- paced and no strict production demands. She was capable of occasional, superficial interactions with others. Claimant can work within a set routine where major changes are explained in advance and gradually implemented to allow the claimant time to adjust to the new expectations. The claimant's ability to handle stress is adequate to handle tasks without strict time limitations or production standards (Exhibit 1A). State agency psychological consultant Bruce Goldsmith, PhD, reviewed the record on October 17, 2017, and affirmed the findings of Dr. Haskins (Exhibit 3A).

(*Id.*, PageID #: 1605, Tr. at 1578). The ALJ found these opinions "partially persuasive" and

explained that Canda's mental impairment was severe, but not disabling. (*Id.*).

## IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 3. Through the date last insured, the claimant had the following severe impairments: major depressive disorder and anxiety disorder (20 CFR 404.1520(c)).

(ECF No. 7, PageID #: 1599, Tr. at 1572)

> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: claimant can understand, remember, carry out and complete simple, routine tasks with no strict production rate pace requirement. Claimant can adapt to occasional and superficial interactions with supervisors, coworkers and the public. Superficial is defined as no arbitration, mediation, negotiation, confrontation or being responsible for the safety or supervision of others. Claimant can adapt to routine and occasional workplace changes.

(*Id.*, PageID #: 1600, Tr. at 1573).

> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

(*Id.*, PageID #: 1607, Tr. at 1580).

> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 31, 2013, the alleged onset date, through March 31, 2015, the date last insured (20 CFR 404.1520(g)).

(*Id.*)

## V. Law & Analysis

### A.  Standard of Review

9

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the

national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

## C. Discussion

### 1. The ALJ complied with the Appeals Council's Remand Order.

Canda argues that "[t]he ALJ failed to consider the facts in evidence and the issues presented in this matter de novo and issue a new decision consistent with the Appeals Council's Remand Order." (ECF No. 11 at 10). Canda maintains that the ALJ violated the Appeals Council's remand order by essentially "cutting and pasting" the deficient rationale of the prior ALJ's decision despite being instructed by the Appeals Council to conduct a de novo review and issue a new "legally sufficient and defensible decision." (ECF No. 11 at 17). Additionally, Canda maintains that the ALJ's decision failed to adequately analyze the opinion evidence as instructed by the Appeals Council. (ECF No. 11 at 17). Canda argues that the only difference in the analysis of the state agency consultants' opinions between vacated ALJ decision and the one at issue here is the insertion of the word "persuasive" in the new decision. Canda argues that the ALJ's decision lacks adequate explanation of the "supportability" or "consistency" of the opinion evidence. (*Id.* at 21). The Commissioner states that the ALJ complied with the remand order when they "reevaluated the prior administrative medical findings as instructed by the Appeals Council and gave further consideration to Plaintiff's RFC." (ECF No. 13 at 11).

11

Additionally, the Commissioner argues that "the ALJ articulated [their] consideration of the persuasiveness of the prior administrative medical findings, focusing on the supportability and consistency of the assessments and referenced evidence that supported his determination." (ECF No. 13 at 15).

In this issue, Canda asks this Court to review the ALJ decision for compliance with the Appeals Council's remand order. Neither party addresses the preliminary question of whether this Court has jurisdiction to review Canda's claim that the ALJ failed to follow the Appeals Council's instructions during the course of an administrative review. The Sixth Circuit has provided the following guidance on this issue:

> When the Appeals Council issues a remand order to an ALJ, the ALJ must "take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. § 404.977(b). When a remand order contains detailed instructions concerning the scope of the remand and the issues to be addressed, "further proceedings in the trial court or agency from which appeal is taken must be in substantial compliance with such directions; and if the cause is remanded for a specified purpose, any proceedings inconsistent therewith is [sic] error." *Mefford v. Gardner*, 383 F.2d 748, 758 (6th Cir. 1967); *see also Kaddo v. Comm'r of Soc. Sec.*, 238 F. Supp. 3d 939, 944 (E.D. Mich. 2017).

*Wilson v. Commissioner*, 783 Fed App'x 489, 496-497 (6th Cir. 2019) (parenthetical omitted).

On remand, the Appeals Council ordered a new ALJ to:

- Give further consideration to the claimant's maximum RFC during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations (Social Security Ruling 96-8p). In so doing, evaluate the prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c.

- If warranted, obtain medical expert evidence.

- If warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed

12

> limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The ALJ will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the ALJ will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the DOT and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)

(ECF No. 7, PageID #: 1707, Tr. at 1680). The Appeals Council further stated that "[i]n compliance with the above, the ALJ will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (*Id.*). The initial decision found that Canda could perform light work with the following exceptions: "simple tasks and simple routine decisions; interacting with supervisors, coworkers, and the public if the work is goal-oriented, but not at a fast-paced or production rate pace, and the work functions in relating to people are limited to speaking-signaling, serving, or taking instructions-helping…and changes in the routine work setting are explained in advance." (*Id.*, PageID #: 43-44, Tr. at 16-17). The Appeals Council provided guidance as to the concerns with the initial RFC:

> *It is unclear how the ALJ addressed the assessed quantitative limitation for only occasional interaction*. Thus, although the ALJ found the State agency psychological consultants' findings persuasive, *no rationale is provided for formulating a less restrictive mental RFC than assessed by these reviewers*. This is relevant because the ALJ did not ask the vocational expert at the hearing whether an additional limitation for only occasional interaction with coworkers, supervisors, and the public would significantly erode the occupational base of unskilled, light work.

(*Id.*, PageID #: 1708, Tr. at 1679) (emphasis added). On remand, the ALJ recognized that the State agency consultants limited Canda to occasional interaction with others. (*See id.*, PageID #:

13

1596, Tr. at 1569; PageID #: 1605, Tr. at 1578). The ALJ explained that State agency consultants' opinions were "partially persuasive as the claimant's mental impairment was severe, but not disabling as supported by the mental status examinations at MetroHealth. These findings are consistent with the limited course of mental health treatment and the claimant's activities of daily living." (*Id.*, PageID #: 1605, Tr. at 1578). After considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p" and "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c" (*id.*, PageID #: 1600, Tr. at 1578), the ALJ found that Canda could perform a full range of work at all exertional levels but with the following exceptions: "claimant can understand, remember, carry out and complete simple, routine tasks with no strict production rate pace requirement. Claimant can adapt to occasional and superficial interactions with supervisors, coworkers and the public. Superficial is defined as no arbitration, mediation, negotiation, confrontation or being responsible for the safety or supervision of others. Claimant can adapt to routine and occasional workplace changes." (*Id.*, PageID #: 1600, Tr. at 1573).

The second ALJ decision substantially complies with the Appeals Council's directions to "give further consideration" to Canda's RFC by "evaluat[ing] the prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c." The decision discusses the State agency consultants' opinion that Canda should be limited to occasional interaction and *included that limitation in the RFC.*

Moreover, the second ALJ decision adequately addresses the rational for finding the State agency consultants' opinions "partially persuasive". Title 20 CFR 404.1520c requires that an

14

ALJ "articulate how [they] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. 20 C.F.R. § 404.1520c(a). Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c), 404. 1520c(b)(2). An ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ...."). Here, the ALJ found the State agency consultants' opinions "partially persuasive" and explained that although Canda suffered from a severe mental health impairment, the mental health examinations at MetroHealth (*see* ECF No. 7, PageID #: 375- 506, Tr. at 348-479) supported the finding that the impairment was not disabling. The ALJ also discussed the consistency of the finding by explaining that it was consistent with Canda's "limited course of mental health treatment" and her "activities of daily living", which included raising her two daughters (ECF No. 7, PageID #: 1605, Tr. at 1578; PageID #: 1606, Tr. at 1579).

The ALJ did as directed by the Appeals Council. The ALJ provided the necessary consideration and provided enough evidence of record to support the RFC and the assessed limitations, pursuant to the Appeals Council's remand order. *See Dunlap v. Comm'r of Soc. Sec.*, No. 5:18CV2275, 2020 WL 5441737, at *10 (N.D. Ohio Mar. 13, 2020), *report and recommendation adopted*, No. 5:18CV2275, 2020 WL 3118351 (N.D. Ohio June 12, 2020), *aff'd*, No. 20-4179, 2021 WL 5371401 (6th Cir. Sept. 20, 2021).

The second decision also addresses the Appeals Council's concern regarding the initial ALJ's failure to ask the vocational expert whether an additional limitation for only occasional interaction with coworkers, supervisors and the public would significantly erode the occupational base of unskilled light work. During the hearing, the ALJ presented the vocational expert with the following hypothetical question:

> And further assume that this individual is limited as follows. This is a nonexertional hypothetical but with the following additional limitations. This individual can understand, remember, carry out, and complete simple routine tasks with no strict production-rate pace requirements. This individual can adapt to only occasional and superficial interactions with supervisors, co-workers, and the public. And by superficial, I mean no arbitration, mediation, negotiation, confrontation, or being responsible for the safety or supervisor of others. Lastly, this person can adapt to only routine and occasional workplace changes.

(ECF No. 7, PageID #: 1630, Tr. at 1603). The vocational expert testified that Canda would not be able to perform her past work but that there would be unskilled work at the medium exertional level. (*Id.*, PageID #: 1631, Tr. at 1604). The hypothetical posed by the ALJ to the vocational expert properly included Canda's limitations that the ALJ found were supported by the record. Canda does not argue otherwise.

Accordingly, Canda's argument that the ALJ's decision failed to comply with the Appeals Council's remand order has no merit.

### 2.  Substantial evidence supports the RFC.

In her second issue, Canda maintains that the RFC is not supported by substantial evidence. (ECF No. 11 at 21, 23-4). Specifically, Canda argues that the second decision is "virtually verbatim" to the prior initial decision and that it still "fails to acknowledge or discuss evidence that suggest a greater level of severity, or a more limited functional capacity." (*Id*. at 21-2). Canda cites to several medical records that contained information supporting her claim

that suffered more severe limitations than determined by the ALJ. In response, the Commissioner argues that Canda is asking the Court to re-weigh evidence, which it is not allowed to do, and that " 'the law does not require the ALJ to discuss every piece of evidence that is supportive or inconsistent with the RFC.' " (ECF No. 13 at 22 (quoting *Byler v. Kijakazi*, No. 5:20-cv-1822, 2022 WL 980099, at \*8 (N.D. Ohio Jan. 21, 2022)).

The Sixth Circuit has found that a claimant's allegation of cherry-picking evidence by an ALJ "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")). "To the contrary, it is the ALJ's responsibility to resolve conflicts in the record where there are conflicting opinions resulting from essentially the same medical data." *Byler*, 2022 WL 980099, at \*8 (citing *Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence")) (additional citations omitted). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations omitted).

Here, after detailing Claimant's medical history and reported symptom testimony, the ALJ stated:

> Through the date last insured of March 31, 2015, I find that the mental status examinations and course of treatment in this case are not consistent with disabling mental impairment and are more consistent with the stated residual functional capacity. Claimant was depressed and anxious with racing thoughts, but she was able to sustain attention and concentration. Insight and judgment were fair. Recent and remote memory were within normal limits (Exhibit 2F). The record does not show psychotic symptoms or

> disrupted thought processes from December 31, 2013, to March 31, 2015.
>
> The record does not show a diagnosis of PTSD prior to March 31, 2015.

(ECF No. 7, PageID #: 1604, Tr. at 1576). Canda argues that the ALJ did not consider all the evidence before reaching their conclusion. Specifically, Canda argues that "the ALJ fails to address most of the additional significant findings on Mental Status Examination ('MSE') throughout the pertinent period that could reasonably support a finding of greater severity of the plaintiff's condition and/or substantiate a more limited functional capacity." (ECF No. 11 at 24). Canda directs the court to the February 20, 2014, progress note, which includes Canda's subjective complaints and Nurse Lieder's objective assessment. (ECF No. 7, PageID #: 482-83, Tr. 455-56) of February 20, 2014. The ALJ discussed this record and noted Canda's "racing thoughts" and that her mood was "depressed and anxious" and that Canda had a full-ranged affect and sustained concentration. (*Id*., PageID #: 1602, Tr. at 1575). Canda states that the ALJ failed to include evidence of her increased appetite, "terrible" energy, poor concentration, "tons" of guilt, irritability and isolation. (ECF No. 11 at 24 (citing Tr. 455-456)). Canda complains that the ALJ treated subsequent visits similarly, where they mention Canda's "racing thoughts" and depressed mood, but omit findings demonstrating the severity of her impairment including "significant weight gain between thirty-eight to one hundred pounds (attributed to increased appetite and medication side effects) (Tr. 394, 443-444)[,] [ ] ongoing symptoms of isolation and irritability (Tr. 373, 387, 394, 407, 437, 499-450, 455-456, 463-464)[,] [ ] poor concentration and significantly reduced energy and motivation and terrible guilt (*Id.*)[,] [ ] issues of sleep disturbance and insomnia." (*Id*. at 25). Claimant argues that the evidence demonstrating how her medications were constantly adjusted suggests their "ineffectiveness in symptom

management[.]" (*Id.* (citing Tr. 394, 418-419, 430-431, 437, 449-450, 455-456, 474-476)).

Claimant's assertion that the ALJ ignored significant and material portions of the record

is not persuasive. The Sixth Circuit Court of Appeals has explained that:

> [An] ALJ [is] not required to explain every piece of evidence in the
> record [or] address each check mark from the Physician's Reports.
> An "ALJ can consider all the evidence without directly addressing
> in his written decision every piece of evidence submitted by a
> party." *Loral Defense Sys.-Akron v. NLRB*, 200 F.3d 436, 453 (6th
> Cir. 1999) (explaining that "[a]lthough the ALJ's decision in this
> case may not be a model of clarity and detail, ... the ALJ's
> treatment of the evidence in this case is more than amply supported
> by the record as a whole"); *see also Her v. Comm'r of Soc. Sec.*,
> 203 F.3d 388, 389-90 (6th Cir. 1999) ("Even if the evidence could
> also support another conclusion, the decision of the Administrative
> Law Judge must stand if the evidence could reasonably support the
> conclusion reached.").

*Bayes v. Comm'r of Soc. Sec.*, 757 Fed. App'x 436, 445-46 (6th Cir. 2018).

Claimant's argument merely highlights that there may be substantial evidence to support

an alternative conclusion. This is not enough to disturb the ALJ's finding. As long as substantial

evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is

substantial evidence in the record that would have supported an opposite conclusion[.]'" *Wright

v. Massanari,* 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan,* 109 F.3d 270, 273

(6th Cir. 1997)); s*ee Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the

Commissioner are not subject to reversal merely because there exists in the record substantial

evidence to support a different conclusion.") (citations omitted). Here, the ALJ discussed

evidence that weighed both in favor of and against granting benefits. The ALJ noted Canda's

symptom testimony that she lived in fear and was afraid to be home by herself; the ALJ noted

that Canda showered only once a week, had trouble holding friendships, and had difficulty

sleeping. (ECF No. 7, PageID #: 1601-04, Tr. at 1574-77). The ALJ noted Canda's depression

related to her divorce, her anxiety, nervousness, difficulty focusing, feelings of defeat, and irritability. (*Id.*). The ALJ noted that Canda's medications were being adjusted throughout her treatment. (*Id.*). The ALJ also stated that "[t]he record does not establish that the claimant's use of prescribed medication was accompanied by side effects that would have interfered significantly with her ability to perform work within the restrictions outlined in this decision." (*Id.*, PageID #: 1606, Tr. at 1579). After reviewing Canda's symptom testimony, the objective medical evidence, and the medical opinions and prior administrative medical findings (*id.*, PageID #: 1600, Tr. at 1573), the ALJ found that Canda's symptoms were "not consistent with a disabling mental impairment[.]" (*Id.*, PageID #: 1604, Tr. at 1577). As set forth above, substantial evidence supports this decision.

To the extent Canda asks the court to override the ALJ's weighing of the evidence, the court declines to do so.

Finally, Canda's argument that the decision is not supported by substantial evidence because it was essentially "verbatim" of the earlier decision, which was remanded, is meritless. The ALJ addressed the Appeals Council's concerns on remand and included in the RFC a limitation for occasional interaction with others. As discussed above, the decision is supported by substantial evidence. Canda's assertion that the medical history and ultimate conclusion are similar to the initial decision is inconsequential, and Canda does not cite any authority stating that a later decision by an ALJ must read differently from an earlier, nonbinding decision.

Here, substantial evidence supports the ALJ's decision, and this Court must not disturb that finding absent significant evidence that the ALJ failed to consider the evidence of the record. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

**VI. Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's

Statement of Errors and AFFIRM the Commissioner's decision.


Dated: October 10, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530-31 (6th Cir. 2019).